IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPHINE A. GARCIA,<br><br>           Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>           Defendant. | CIV. NO. 20-00148 JMS-RT<br><br>ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS |

**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS**

### I.  INTRODUCTION

Plaintiff Josephine A. Garcia ("Plaintiff") seeks review under 42 U.S.C. § 405(g) of a determination by the Commissioner of Social Security ("Defendant") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  42 U.S.C. §§ 423 and 1382c.  She argues that the administrative law judge ("ALJ") erred by failing to provide the requisite "specific, clear[,] and convincing" reasons for discounting her testimony that she could not reliably lift three pounds in making his residual functional capacity ("RFC") determination.  *See* ECF No. 15 at PageID # 683; *Brown-Hunter*

*v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The court agrees with Plaintiff.

Although the ALJ gave specific reasons for reaching his RFC conclusion, his analysis entirely failed to address Plaintiff's testimony about her limited weightbearing capacity and thus failed to provide "specific, clear[,] and convincing" reasons for discounting it.  For this reason, and as explained in more detail below, the court REVERSES the ALJ's February 10, 2017 Decision and REMANDS the action to the ALJ for further proceedings.

## II.  BACKGROUND

On March 23, 2016, Plaintiff applied for SSI payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382c, alleging disability as of May 1, 2015.[1]  ECF No. 13-3 at PageID # 63.  Along with her application, Plaintiff submitted evidence that she was suffering from both mental disabilities—major depression, post-traumatic stress disorder, and generalized anxiety disorder—and physical disabilities—degenerative changes of the spine, osteopenia, and arthrosis.  *Id.* at PageID ## 65-67 (summarizing evidence).

On January 13, 2017, the Social Security Administration denied Plaintiff's SSI application.  ECF No. 13-5 at PageID # 146.  Plaintiff filed a request for reconsideration, *id.* at PageID # 150, which was denied by notice on

---

[1] Although Plaintiff asserted that her disability began on May 1, 2015, SSI is not payable prior to the month following the month in which the application was filed (April 2016 in this case).  20 CFR § 416.335.

June 19, 2017, *id.* at PageID # 153.  On July 12, 2017, Plaintiff filed a request for an administrative law hearing.  *Id.* at PageID # 156.  A hearing was held before an ALJ on January 8, 2019.  *Id.* at PageID # 178.  Plaintiff and a state vocational expert testified at the hearing.  *See* ECF No. 13-3 at PageID # 83.

At the hearing, when asked about her physical problems, Plaintiff testified that she was suffering from "just a little arthritis" in both of her arms and "normal pains every now and then" in her spine, neck, and back.  ECF No. 13-3 at PageID ## 95-96.  When asked whether she could go back to work five days a week, eight hours a day "packing shoes in a box," she answered "[y]eah."  *Id.* at PageID # 99.  The ALJ then asked Plaintiff how much weight she could lift "without hurting herself" "not all day long, but one time."  *Id.*  Plaintiff stated that she thought she could lift 10 pounds.  *Id.* at PageID # 100.  And when the ALJ asked if she could lift 20 pounds in this same, limited manner, she responded, "I think I could, but then it's an iffy, how I'm feeling."  *Id.*  She elaborated that she could not lift this much every day.  *Id.*  She went on to explain that in the past she "tried to lift three pounds" every day for her arthritis, but that doing so "irritates it a lot . . . and [three pounds is] the heaviest I will go, because it irritates it."  *Id.* [2]

---

[2] The colloquy between the ALJ and Plaintiff at the hearing proceeded as follows:

ALJ: Do you have any idea how much you could lift, not all day long, but one time, how much do you think you could lift without hurting yourself? Could you—I'll give you a—do you think you could lift ten pounds?

(Continued)

Next, the vocational expert testified that Plaintiff could work if she was capable of lifting and carrying at least 20 pounds occasionally and 10 pounds frequently, but that she would qualify as disabled if she could only lift 10 pounds occasionally and less than 10 pounds frequently. *Id.* at PageID ## 103-06. In addition to the testimony of Plaintiff and the vocational expert, the ALJ considered Plaintiff's medical records and opinion evidence provided by Plaintiff's treating physicians as well as several state agency physicians. *Id.* at PageID ## 77-81.

---

P: I think so.

ALJ: Do you think you could lift 20, which is like a little more than two gallons of milk?

P: I think I could, but then it's an iffy, how I'm feeling.

ALJ: So not every day.

P: No.

ALJ: Some days you could. Some days you couldn't.

P: Because I tried to lift for my arthritis, I tried to lift three pounds. Every day I tried to use it for my arms.

ALJ: Right.

P: And that irritates it a lot.

ALJ: What do you have, like a three-pound weight?

P: Yeah.

ALJ: Okay.

P: And that's the heaviest I will go, because it irritates it. So I don't know.

ECF No. 13-3 at PageID ## 99-100.

On February 6, 2019, the ALJ denied Plaintiff's application. *Id.* at PageID # 60.  In reaching his decision, the ALJ applied the five-step sequential analysis established by the Social Security Administration to assess disability claims.  This analysis asks:

(1) Has the claimant been engaged in substantial gainful activity? If so, the claimant is not disabled.  If not, proceed to step two.

(2) Has the claimant's alleged impairment been sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled.  If not, proceed to step four.

(4) Does the claimant possess the RFC[3] to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

---

[3] The RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34474-01, 34475 (July 2, 1996). It "is the most [a claimant] can still do despite [their] limitations."  20 C.F.R. § 416.945(a)(1).

>   (5) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*See id*. at PageID ## 63-65; *see also, e.g.*, *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920). For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the claimant reaches step five, the burden shifts to the Commissioner. *Id.*

In this case, the ALJ found as follows. At Step 1, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the application date, March 23, 2016. ECF No. 13-3 at PageID # 65. At Step 2, the ALJ found that Plaintiff "has the following sever impairments: degenerative changes of the cervical spine; generalized anxiety disorder; post-traumatic stress disorder (PTSD); major depression, recurrent; and alcohol abuse, in remission." *Id.* He also found that Plaintiff suffers from "hyperkalemia; hyperlipidemia, and; mild osteoarthritis of the bilateral shoulders," but that "these impairments do not constitute severe impairments." *Id.* At Step 3, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at PageID # 67.  Proceeding to Step 4, the ALJ found that Plaintiff had a Medium Work RFC.  In other words, that:

> Claimant can lift or carry 50 pounds occasionally and 20 pounds frequently; can stand and/or walk for about 6 hours out of every 8; can sit for about 6 hours out of 8; is limited to frequent postural activities; is precluded from hazardous machinery and unprotected heights to include no ladders, ropes, or scaffolds; is limited to simple and routine tasks, in a nonpublic environment with occasional interaction with coworkers.

*Id.* at PageID # 69.  And, based on that RFC finding, the ALJ concluded at Step 5 that Plaintiff is "capable of performing past relevant work . . . as an Industrial Cleaner."  ECF No. 13 at PageID # 75.  Thus, the ALJ found Plaintiff not disabled and denied her application for SSI payments.  *Id.* at PageID # 76.  Plaintiff requested that the Social Security Appeals Council review the ALJ's decision, but the Council denied that request and adopted the ALJ's decision as the final decision of the Commissioner.  *Id.* at PageID # 46.

Plaintiff now seeks judicial review of the ALJ's decision.  ECF No. 1. On appeal, Plaintiff frames her argument as contesting the ALJ's decision at Step 5: that Plaintiff's RFC would allow her to perform past relevant work as an industrial cleaner.  ECF No. 15 at PageID # 677 ("[Plaintiff] disagrees with the Social Security Administrative Law Judge ('ALJ') finding at Step Five."). Substantively, however, Plaintiff appears to be arguing that the ALJ erred at Step 4

by disregarding Plaintiff's subjective testimony in calculating her RFC. *Id.* at PageID ## 684-86. Indeed, Plaintiff argues that "the problem here" is that the ALJ "misunderstood [her] testimony that she could not reliably carry 20 pounds at a time" and thus incorrectly calculated her RFC when he concluded that she could lift or carry 50 pounds occasionally and 20 pounds frequently. *Id.* at PageID # 686. Put another way, Plaintiff is arguing that by misconstruing Plaintiff's testimony, the ALJ effectively rejected that testimony without providing the requisite "specific, clear[,] and convincing reasons" for doing so. *Id.* at PageID # 683.

Plaintiff filed her Opening Brief on December 2, 2020, ECF No. 15. Defendant filed his Answering Brief on January 25, 2021, ECF No. 16, and Plaintiff filed her Reply on February 8, 2021, ECF No. 17. This matter is decided without hearing pursuant to Local Rule 7.1(c). *See* ECF No. 21.

### III. LEGAL STANDARD

A claimant is "disabled" for purposes of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter*, 806 F.3d at 492. First, courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation and citation omitted). And, third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless. *Brown-Hunter*,

9

806 F.3d at 492. An error is harmless if it is "'inconsequential to the ultimate non-disability determination'" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1099).

### IV. DISCUSSION

On appeal, Plaintiff argues solely that the ALJ committed legal error in calculating Plaintiff's RFC by "rejecting [Plaintiff's] testimony that she could not reliably lift even 20 pounds" without providing "specific, clear and convincing reasons" for doing so. ECF No. 15 at PageID # 677. In other words, "the ALJ misconstrued [Plaintiff's] testimony as to her ability to lift, thus adopting what the ALJ construed [Plaintiff] to have said, while rejecting, without providing any reasons, the testimony that [Plaintiff] actually uttered." *Id.* at PageID ## 688-89. Defendant responds that the ALJ did not err, but instead provided "four specific reasons supported by substantial evidence for his finding." ECF No. 16 at PageID # 711.

**A.  Legal Standards**

In determining a claimant's RFC, the ALJ is required to consider the claimant's symptom testimony. *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (explaining that when calculating the RFC, the ALJ must consider both "objective medical and

other evidence, *including the individual's complaints of pain and other symptoms*") (emphasis in original) (quoting SSR 96-8p, 61 Fed. Reg. at 34478). Specifically, ALJs are required to conduct a two-step analysis. *Brown-Hunter*, 806 F.3d at 493. First, the ALJ must determine whether the claimant has provided "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged." *Id.* In this analysis, the claimant "is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (emphasis in original) (internal citation and quotation omitted). Nor must a claimant produce "objective medical evidence of the [symptom], or the severity thereof." *Id.* (internal citation and quotation omitted).

If the claimant satisfies this burden, and there is no evidence of malingering, the ALJ may only "reject the claimant's testimony about the severity of [her] symptoms by offering specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 488-89). "This requires the ALJ to 'specifically identify the testimony from a claimant she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Id.* (quoting *Treichler*, 775 F.3d at 1102);

11

*see also Brown-Hunter*, 806 F.3d at 493 (explaining that the ALJ's determination "'must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'") (emphasis in original) (quoting Social Security Ruling 96-7P, 1996 WL 374186, at *2 (July 2, 1996)).

Under this standard, an ALJ commits legal error when he discredits a claimant's testimony without identifying specifically *which of a claimant's statements* he found credible or not credible and why. *See, e.g.*, *Treichler*, 775 F.3d at 1102-03; *Brown-Hunter*, 806 F.3d at 494-95 (finding reversible legal error where the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (holding that the ALJ committed legal error because he "did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony" (emphasis in original)). In contrast, a credibility determination will be upheld where the ALJ specifically identifies the testimony he disagrees with and makes specific findings to support his reasoning. *See Burrell*, 775 F.3d at 1138.

The "'grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Treichler*, 775

12

F.3d at 1103 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).  Thus, in reviewing an ALJ's decision to reject a claimant's testimony, courts are not to draw inferences from the record that might support the ALJ's determination.  Rather, courts are "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Treichler*, 775 F.3d at 1103 ("[Courts] cannot substitute [their] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.") (citations omitted)).

**B.   Application of Legal Standards**

Here, the ALJ committed legal error by disregarding Plaintiff's testimony about her limited weight-lifting capacity without providing specific, clear, and convincing reasons for doing so.[4]

---

[4] The ALJ may have simply misremembered Plaintiff's hearing testimony and his decision may have stemmed from this factual mistake rather than his failure to apply the appropriate legal standard.  That said, the court cannot speculate as to the ALJ's reasoning, but must review the record before it.  *Treichler*, 775 F.3d at 1103.  And the record provides no indication as to whether the ALJ did in fact misremember, or whether he applied an improper legal standard in rejecting Plaintiff's testimony.  Moreover, the effect of the ALJ's failure to address Plaintiff's testimony regarding her weight-lifting capacity—regardless of whether this was a mistake of fact or of law—was to discredit that testimony.  Thus, the appropriate standard to apply is the "clear, convincing, and specific reasons" standard. *Cf. Zarate v. Berryhill*, 2017 WL 6989124, at *3 (D. Or. Dec. 20, 2017), *F&R adopted*, 2018 WL 472440 (D. Or. Jan. 18, 2018) (applying the "specific, clear and convincing reasons" standard to evaluate a claim that

(Continued)

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," including her weight-lifting limitations, and did not put forth any evidence of malingering.[5]  ECF No. 13-3 at PageID # 70.  Thus, he was required to provide "specific, clear, and convincing" reasons for discounting Plaintiff's testimony.  Instead, he merely stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the medical evidence[.]"  ECF No. 13-3 at PageID # 70.  But "this 'boilerplate statement' by way of 'introductory remark,' which is 'routinely included' in ALJ decisions denying benefits" is inadequate because it does not "'identify what parts of the claimant's testimony were not credible and why.'"  *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1103).

As Defendant notes, the ALJ then went on to provide four reasons why "claimant could work within the bounds of the RFC adopted (medium work; lifting 50 pounds occasionally and 20 pounds frequently), despite her 'severe' degenerative changes of the cervical spine."  *Id.* at PageID # 72.  In reaching this

---

"the ALJ wrongfully discredited [the claimant's] subjective symptom testimony because his finding was not supported by substantial evidence and was, in part, based on mistake of fact").

[5]  Defendant does not dispute that this determination encapsulates the limited weight-lifting capacity Plaintiff testified to.  Instead, Defendant argues that the ALJ did not commit legal error because he "provided four specific reasons supported by substantial evidence for how he evaluated that testimony."  ECF No. 16 at PageID # 711.

conclusion, the ALJ discounted Plaintiff's "complain[ts] of back pain from degenerative changes" by pointing to objective medical evidence such as x-ray and physical examinations that yielded "generally benign findings"; Plaintiff's own reported activity, including that she was able to bike and walk daily, carry her bike upstairs to her apartment, and do sit-ups; and Plaintiff's testimony "that she could work despite her physical impairments" and that "she could lift twenty pounds." *Id.* at PageID ## 69, 72-73.

Specific findings of this nature can provide a proper basis to discount a claimant's testimony. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (affirming ALJ's decision where the ALJ specifically identified the claimant's testimony about his level of pain and rejected it as not credible because it was inconsistent with the claimant's reported daily activities, the objective medical findings, and the claimant's lack of consistent treatment); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (upholding ALJ's findings that (1) claimant's testimony that he had to "change positions constantly" was not credible given claimant's regular college attendance; and (2) claimant's testimony that he could not lift 10 pounds was not credible because it conflicted with the objective medical evidence suggesting he could lift 10 pounds frequently); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding ALJ properly rejected claimant's testimony that he could

not work because of pain based on his conflicting testimony that he was able to care for animals, go for walks outdoors, go out for coffee, and visits with neighbors).

But here, the ALJ's analysis contains a fatal flaw: these specific findings were not linked in any way to the ALJ's decision to disregard Plaintiff's testimony that she could not lift three pounds regularly or that she was "iffy" about her ability to lift twenty pounds even occasionally—testimony that the ALJ was obligated to consider when determining Plaintiff's RFC.  In fact, the ALJ did not address this testimony at all at any point in his decision.  Instead he relied upon the first portion of Plaintiff's answer to his question about whether she could lift twenty pounds "not all day long, but one time" of "I think I could" in reaching his RFC determination, without addressing Plaintiff's qualifiers that lifting twenty pounds was "iffy" or her explanation that she could not lift more than three pounds regularly.  ECF No. 13-3 at PageID ## 69, 99-100.

Moreover, "[a]lthough the ALJ [provided] a relatively detailed overview of [Plaintiff's] medical history" in reaching his RFC determination, "'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'"  *Lambert*, 980 F.3d at 1278 (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494).  By failing to specifically identify the testimony he was

16

rejecting (i.e., that lifting twenty pounds—even on a one-time basis—was "iffy" and that Plaintiff could not lift more than three pounds regularly) and failing to provide reasons for disregarding *that specific testimony*, the ALJ's analysis does not satisfy the "clear, convincing, and specific reasons" standard. *See, e.g.*, *Burrell*, 775 F.3d at 1138 (explaining that under the "clear, convincing, and specific" standard, the ALJ must specifically explain "*which* [evidence in the record] conflict[s] with *which* part of Claimant's testimony") (emphasis in original); *Brown-Hunter*, 806 F.3d at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." (emphasis in original)). The ALJ need not have performed a "line-by-line exegesis of the claimant's testimony," but he was required to tether the specific testimony he found not credible with the evidence that contradicted that testimony. *Lambert*, 980 F.3d at 1277. And that he failed to do.

    Finally, having found that the ALJ committed legal error, the court must determine whether that error was harmless—that is whether "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation and citations omitted); *McLeod v. Astrue,* 640 F.3d 881, 887

n.25 (9th Cir. 2011) (explaining that harmless error does not warrant reversal in the social security context). Here, "[b]ecause the ALJ did not provide enough reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence, [the court] cannot treat the error as harmless." *Lambert*, 980 F.3d at 1278 (internal quotation and citation omitted). Indeed, given that the vocational expert opined that Plaintiff could not work if she could not lift more than 10 pounds frequently, it is certainly possible that proper consideration of Plaintiff's testimony could have altered the ultimate non-disability determination. *See id.* The ALJ's decision is therefore reversed and remanded to the ALJ to consider all of the evidence and to explain why he did not credit Plaintiff's testimony about her limited weight-lifting capacity.[6]

## V. CONCLUSION

The ALJ failed to provide the requisite "specific, clear, and convincing" reasons for disregarding Plaintiff's testimony about how much weight she can lift. The ALJ's decision is therefore REVERSED and the case

---

[6] Plaintiff asks the court to "direct[] the Defendant to pay SSI benefits to Plaintiff" or "in the alternative" to "[r]emand[] the matter to the Defendant for a new hearing on the SSI application." ECF No. 1 at PageID # 4. The decision to remand or award benefits is within the discretion of the court. *Revels*, 874 F.3d at 668. That said, "'if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded' for further proceedings." *Id.* (quoting *Garrison*, 759 F.3d at 1019). Here, the defects can be remedied by the ALJ considering Plaintiff's testimony about her weight-bearing capacity and adequately explaining his decision to credit or not to credit that testimony. Thus, remand for further proceedings is the appropriate remedy.

REMANDED back the ALJ for further findings consistent with this opinion.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 24, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Garcia v. Saul*, Civ. No. 20-00148 JMS-RT, Order Reversing Decision of Commissioner of Social Security and Remanding Action for Further Proceedings